OPINION
Plaintiff-appellant, Mark M. McCarthy, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, MN Risk Management, Inc. For the reasons that follow, we affirm that judgment.
Beginning in 1992, appellant worked as an attorney in the workers' compensation section of the Millisor Nobil law firm. In early 1997, that section was spun off from the law firm as a separate and distinct business entity, MN Risk Management, Inc., aka MN Enterprises, Inc. (collectively referred to as "MN"), and sold to International Alliance Services, Inc. ("IASI"). Before that sale, appellant signed an Employment Agreement ("the agreement") with MN. The agreement, among other things, provided that appellant would receive 180 days pay if he was terminated without just cause. Additionally, neither appellant nor MN could assign the agreement to another party without the consent of the other.
MN then went through a series of ownership changes. First, IASI transferred its MN stock to IASI Business Services Management Co. Next, in July 1998, IASI Business Services Management Co. transferred the MN stock to CBSI Management Co., a subsidiary of Century Business Services, Inc. ("CBS"). Finally, on December 31, 1998, CBS sold the MN stock to CompManagement, Inc. ("CMI"). After that sale, MN became a wholly-owned subsidiary of CMI. At that time, CMI required appellant to fill out a number of employment related forms, including tax and benefits forms. However, the terms and conditions of appellant's employment did not change. In March 1999, a few months following CMI's acquisition of MN's stock, appellant resigned his employment to take a position with another employer.
Subsequently, appellant initiated the present lawsuit, alleging he had been terminated without just cause from MN as a result of CMI's purchase of MN stock. Due to this alleged termination, appellant claimed an entitlement to the 180 days pay set forth in the agreement. MN moved for summary judgment on appellant's claim, contending that appellant was not terminated nor had his agreement with MN been assigned to CMI. The trial court agreed, finding that appellant voluntarily resigned his employment and, therefore, he was not entitled to the 180 days of additional compensation specified in the agreement.
Appellant appeals, assigning the following error:
"1. The trial court erred in granting defendant's motion for partial summary judgment as a genuine issue of material fact exists regarding Appellant, Mark McCarthy's termination from MN Risk Management, Inc."
An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists; (2) the moving parties are entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
At the outset, it should be noted that the facts in this case are not disputed. What is disputed is the legal conclusion that should be drawn from those undisputed facts. Appellant's assignment of error contends that the trial court erred in finding he was not terminated from MN. Appellant argues that, because CMI bought all of MN's stock, and, therefore, could administer MN's affairs and direct the activities of MN's employees, his employment agreement with MN was effectively assigned to CMI, thereby terminating his employment with MN without just cause. In support of this argument, appellant points to a number of facts relating to how CMI and MN handled payroll, health, retirement and similar employee benefits following the stock purchase.
First, appellant emphasizes that CMI required appellant to fill out a new W-4 tax form and that CMI was identified as appellant's employer on his W-2 form. Second, appellant signed a 401(k) rollover form, which indicated a change in employment status. Third, MN reported no payroll to the Bureau of Workers' Compensation after January 1, 1999. Fourth, appellant enrolled in CMI's health care program, signed a new non-compete agreement, received a CMI employee handbook, was placed on CMI's payroll, was told to transition MN customers to CMI, and was allegedly informed in a meeting after the stock sale that he was now a CMI employee. Finally, the benefits group in charge of CMI's benefits programs wrote appellant a letter after his resignation stating that appellant was no longer a CMI employee.
None of these facts, however, indicate that MN terminated appellant's employment or assigned his employment agreement to CMI. When MN's stock was purchased by CMI, MN became a wholly-owned subsidiary of CMI. Robert Bossart, the Chief Executive Officer of CMI, and Jonathan Wagner, President of CMI, both testified that there was no change in appellant's employment status after CMI purchased MN. Appellant performed the same duties with the same clients at the same salary. MN continued to exist as a separate legal entity and it did not assign appellant's employment agreement. CMI did take over the day-to-day operations of MN, as its new owner. This included taking over the payroll function which necessitated the completion of a number of tax and other payroll related forms.
CMI also provided new health and retirement benefits that had been provided by MN's previous parent company, CBS. However, CMI's acceptance of certain payroll and other administrative responsibilities, and its willingness to extend a new benefit package to MN employees, did not change the legal nature of appellant's employment relationship with MN, although it may have created additional rights and responsibilities between CMI and appellant. MN continued to exist as a separate legal entity and appellant remained an employee of MN. MN took no action that impaired appellant's rights under the agreement. Although it may well have been CMI's intention to eventually transition MN's business and customers to CMI, until that occurred, MN remained a separate and distinct legal entity with separate and distinct contract rights and obligations under existing agreements.
In conclusion, it is clear that MN was purchased by, and became a subsidiary of, CMI. Although CMI asserted greater control than did MN's previous owners, MN remained a separate legal entity and appellant remained an employee of MN until he voluntarily resigned. In fact, Wagner's March 3, 1999 letter to appellant accepting his resignation was addressed to appellant as Vice-President of MN. Given all of the above, the evidence does not demonstrate a genuine issue of material fact and MN was entitled to judgment as a matter of law. Therefore, appellant was not entitled to the 180 days of additional compensation specified in the agreement. Because reasonable minds could only come to one conclusion, the trial court did not err in granting summary judgment for MN. Accordingly, appellant's lone assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
LAZARUS and BROWN, JJ., concur.